UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LARRY M. WHITTAKER,<br><br>    Plaintiff<br><br>v.<br><br>STATE OF NEVADA, et. al.,<br><br>    Defendants | Case No.: 3:18-cv-00488-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 100 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 100, 100-1 to 100-20.) Plaintiff filed a response (ECF No. 104), and Defendants filed a reply (ECF No. 106).

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are John Allisho, John Borrowman, Shelly Conlin, James Dzurenda, Timothy Filson, Michael Flamm, Moises Fonsaka, Jesse Haines, John Henley, Kate House, William Moore, Austin Peterson, Tanesha Sandoval, Daniel Schmidt, and Brian Ward.

1       The court screened the complaint and allowed Plaintiff to proceed with a due process
2  claim based on the alleged authorized intentional deprivation of his property against Dzurenda,
3  Ward, Henley, Flamm, Conlin, Allisho, Fonsaka, Haines, Peterson, House, Sandoval, Moore,
4  Schmidt, Borrowman, and Filson. There was an investigation by the Inspector General's Office
5  concerning inmates bribing correctional staff to introduce contraband into the prison, and
6  Plaintiff was identified as one of the inmates suspected of participating in this scheme. As a
7  result, he was placed into administrative segregation (ad-seg) on October 9, 2017, and his
8  property was confiscated. Plaintiff alleges that on October 12, 2017, a small portion of his
9  property was returned, but he was not served with a notice of a hearing or other due process
10 regarding the confiscation of his remaining property.

11      Plaintiff was also allowed to proceed with a retaliation claim in Count II against Henley
12 based on allegations that in response to Plaintiff filing a grievance, Henley took adverse action
13 by giving Plaintiff an unusually harsh sanction following a disciplinary proceeding, commenting
14 that it would teach him to file grievances. This occurred in his disciplinary hearing on the charge
15 of bribing the staff to introduce contraband into the prison.

16      Defendants move for summary judgment, arguing: Plaintiff's due process claim is barred
17 by claim preclusion because he raised the same claim in an action in a state small claims court;
18 he failed to exhaust his administrative remedies; he was provided due process when his property
19 was confiscated; the objective evidence proves no retaliation occurred; and Defendants are
20 entitled to qualified immunity.

21                          **II. LEGAL STANDARD**

22      The legal standard governing this motion is well settled: a party is entitled to summary
23 judgment when "the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Count I – Due Process

#### 1. Exhaustion

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

1   NDOC's exhaustion procedure is set forth in AR 740. (ECF No. 100-16.) An inmate is
2 required to complete three levels to exhaust administrative remedies: an informal, first and
3 second level grievance. (*Id*.)
4   Defendants assert that Plaintiff filed informal level grievance, 20063057834, regarding
5 his fan and clock radio, and it was returned to him with instructions on how to complete the
6 grievance. The grievance was returned two more times, with instructions to complete the
7 deficiencies, which Plaintiff did not sign. Plaintiff failed multiple times to sign and date the
8 responses to the grievances. Plaintiff eventually refiled his grievance, but the assistant warden
9 determined that his repeated failure to correct his grievances resulted in abandonment of his
10 claims. (ECF Nos. 100-9, 100-10, 100-11, 100-12.)
11   Plaintiff's opposition focuses on grievance 20063058113, which Plaintiff completed
12 through the second level. (ECF No. 104 at 56-82.) In their reply, Defendants argue that this
13 grievance is irrelevant because it deals with property other than the fan and clock radio. (*See*
14 ECF No. 106 at 8:26-27, n. 7, 9:1.)
15   Defendants' argument relates to Plaintiff's claim about his property, and does not discuss
16 any grievance (or lack of a grievance) concerning his retaliation claim against Henley in Count
17 II; therefore, the court's exhaustion analysis will be limited to the claim in Count I.
18   Plaintiff's complaint alleges that on October 9, 2017, he was placed in segregation and
19 his property was confiscated and inventoried, and then on October 12, 2017, a small portion of
20 his property was returned, but he was not served with any notice of a hearing to confiscate his
21 other property. Plaintiff reached out to the Defendants regarding his property issue, to no avail.
22 In Count I, he alleges that the Defendants violated his rights when they took his property without
23 due process. The claim is not limited, as Defendants suggest, to just the fan and clock radio.

In grievance 20063058113, Plaintiff stated that his property was missing from when officers "rolled him up" on October 9, 2017, and he had not received any unauthorized property forms. (ECF No. 104 at 56-58.) The court finds that Plaintiff sufficiently exhausted his administrative remedies for his due process claim in Count I through grievance 20063058113. Defendants' motion should not be granted on the basis that Plaintiff failed to exhaust administrative remedies.

**2. Claim Preclusion**

Plaintiff filed this action on October 12, 2018; however, the complaint was not screened and filed until October 22, 2019. (ECF Nos. 1-1, 3, 4.) In the meantime, Plaintiff filed a small claims action in the Justice Court of Carson Township in and for Carson City, in the State of Nevada, on November 25, 2019. (ECF No. 100-14.) After having heard testimony on this action on January 27, 2020. on February 18, 2020, the Carson Justice Court issued a notice of dismissal. The court found that Plaintiff declined to return the 1579 form with a selection for disposal of his excess property. (ECF No. 100-15.)

Defendants argue that summary judgment should also be granted as to Count I because Plaintiff alleges the same property claim in this matter as was asserted in a small claims action in state court against substantially the same defendants.

In his response, Plaintiff argues that Nevada Revised Statute 72[1] only provides a remedy for compensation for property, and Plaintiff was not allowed to recover for a due process violation under 42 U.S.C. § 1983 in the small claims proceeding. In addition, Plaintiff argues that

---

[1] The court presumes Plaintiff meant to refer to Chapter 73 of the Nevada Revised Statutes which governs small claims, and not Chapter 72, which pertains to bonds and undertakings.

7

he filed his federal complaint before he filed the small claims action; therefore, claim preclusion is not an issue.

"[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 93 (1980). "Claim preclusion is a broad doctrine that bars bringing claims that were previously litigated as well as some claims that were never before adjudicated." *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 327 (9th Cir. 1995).

"Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments … as the rendering state would." *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016) (citing *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230-31 (9th Cir. 2014). As such, Nevada claim preclusion law governs whether Plaintiff's section 1983 due process claim may be brought in federal court considering his earlier state court case. *See In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (citing 28 U.S.C. § 1738).

In Nevada, claim preclusion applies when: (1) there is a valid, final judgment; (2) "the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case[;]" and (3) "the parties or their privities are the same in the instant lawsuit as they were in the previous lawsuit, *or* the defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so." *Weddell v. Sharp*, 350 P.3d 80, 85, 131 Nev. 233, 241 (2015) (quoting 18A Charles Alan Wright, *et. al.*, *Federal Practice and Procedure* § 4464.1 (2d ed. 2002)).

1  The party asserting claim preclusion bears the burden of proving that it applies. *Pike v.
2 Hester,* 891 F.3d 1131, 1138 (9th Cir. 2018) (citing *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d
3 709, 718, 125 Nev. 470 (2009)); *see also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321
4 (9th Cir. 1992). "'It is not enough that the party introduce the decision of the prior court; rather,
5 the party must introduce a sufficient record of the prior proceeding to enable the trial court to
6 pinpoint the exact issues previously litigated.'" *Clark*, 966 F.3d at 1321 (quoting *U.S. v. Lasky*,
7 600 F.2d 765, 769 (9th Cir. 1979)).

8  The court finds that Defendants have not met their burden of proving that claim
9 preclusion applies here. While Defendants provide the court with Plaintiff's complaint and the
10 notice of dismissal filed in the Carson Justice Court, there is not enough information in these
11 documents for the court to determine what issues and claims were specifically litigated to
12 conclude there is an identity of claims in the two actions or that there was a valid, final judgment
13 in the small claims action. The notice of dismissal is conclusory and merely states that testimony
14 was head on January 27, 2020, but does not describe in what context the testimony was taken
15 (i.e., at a trial, at an evidentiary hearing or some other process) so that the court can determine
16 that the dismissal involved an adjudication of the claim being presented in this action. Nor does
17 the notice of dismissal indicate that a judgment was in fact entered.

18  The small claims action named as defendants Haines, Miller, Baca, and Wickham.
19 (ECF No. 100-14 at 2.) The due process claim in the federal action is asserted against Dzurenda,
20 Ward, Henley, Flamm, Conlin, Allisho, Fonsaka, Haines, Peterson, House, Sandoval, Moore,
21 Schmidt, Borrowman, and Filson. Haines is the only person that was a defendant in both actions.
22 Defendants' motion does not address the issue of whether the parties or their privies were the

same in both actions (or that Plaintiff could have included the additional defendants named in this action) other than saying that the parties were "substantially the same."

For these reasons, Defendants' motion should not be granted based on claim preclusion.

**3. Due Process Protections**

Defendants further argue that Plaintiff was given due process protections and did not produce evidence to establish ownership of his fan and clock radio. In addition, they contend that he had a meaningful post-deprivation remedy within the State court system.

Plaintiff argues that he complained for two months that he did not receive notice of what happened to his missing property. It was only during the grievance process that NDOC attached the unauthorized/excess property forms, DOC 1517. Plaintiff further argues that Flamm's decision to deem Plaintiff's property was arbitrary and capricious, and that Henley did in fact find that the property was listed on his property card.

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Those who seek to invoke due process protections must establish one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005).  Prisoners have a protected interest in their personal property. *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (en banc) (citing *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972); *see also Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("Property interests are created by state law. … Nevada recognizes 'personal property,' which includes 'money, goods, [and] chattels.'").

The Due Process Clause is violated when a defendant "enforces forfeitures of property '[w]ithout underlying [statutory] authority and competent procedural protections.'" *Greene*, 648

F.3d at 1019 (quoting *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)). "Nevada law provides for the regulation of personal property of offenders." *Id*. (citing Nev. Rev. Stat. § 209.239). "The statute grants authority to the NDOC to create policies by which to regulate inmates' property." *Id*.

The constitutional violation is the state's failure to provide due process, rather than the taking or loss itself; therefore, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry … examine[s] the procedural safeguards built into the statutory or administrative procedure effecting that deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinernon v. Burch*, 494 U.S. 113, 125-26 (1990).

Although pre-deprivation process is favored where possible, a post-deprivation hearing, or common law tort remedy for erroneous deprivation may satisfy due process in some circumstances. *Id*. at 128. When determining whether post-deprivation remedies preclude liability under the Fourteenth Amendment, courts distinguish between unauthorized deprivations and authorized, intentional deprivations. Neither negligent nor intentional unauthorized deprivations of property by prison officials are actionable under section 1983 when the state provides a post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).

In contrast, an authorized, intentional deprivation of property is actionable under the Due Process Clause, irrespective of post-deprivation remedies. *See Hudson*, 468 U.S. at 532 n. 13 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan*, 455 U.S. at 436; *Piatt v. MacDougall*, 773 F.2d 1032,

1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

During Plaintiff's transfer to ad-seg, Haines conducted an inventory of Plaintiff's property. (ECF No. 100-2; Pl. Decl., ECF No. 104 at 20 ¶ 1.) Plaintiff claims that on October 12, 2017, Flamm delivered his property to his new unit, stating that numerous items did not belong to Plaintiff. He further claims that Flamm told him that the prison was no longer using the DOC 1517 unauthorized/excess property forms, but that a notice of charges was being used instead. (Pl. Decl., ECF No. 104 at 20 ¶ 2.) Later that day, Plaintiff asserts that Fonsaka brought his property to his cell and Plaintiff and Fonsaka inventoried the property together, and Plaintiff advised Fonsaka that numerous items were missing. Fonsaka told Plaintiff to sign the inventory form and he would make note of the missing property and would contact Flamm. (Pl. Decl., ECF No. 104 at 21 ¶ 4.) Plaintiff claims that he advised the other Defendants about his property issue to no avail. (ECF No. 104 at 21-22 ¶¶ 4-8.) Plaintiff also filed various grievances about his property issues. (Grievance 20063057843 at ECF Nos. 100-9, 100-10, 100-11, 100-12; Grievance 20063058317 at ECF No. 104 at 82, 85-86; Grievance 20063058113 at ECF No. 104 at 56-82; Grievance 20063059366 at ECF No. 100-13 at 12, ECF No. 100-14 at 33-35; Grievance 20063064027 at ECF No. 100-13 at 10, ECF No. 100-11 at 4.)

Eventually, Flamm brought a notice of charges against Plaintiff asserting that his television, fan and clock radio had been altered. (ECF No. 100-3.) He had a disciplinary hearing before Henley for failure to follow rules and regulations. Henley found Plaintiff guilty and ordered disposal of the confiscated property items, but did note that Plaintiff's property card listed the fan and clock radio and those items should be returned if the serial items listed on the property card matched Plaintiff's property. (ECF Nos. 100-5, 100-6.)

AR 711 regulates an inmates' possession of personal property. For instance, it precludes an inmate from possessing excessive or altered items, and permits confiscation of such items. As Plaintiff points out, AR 711 also provides inmates with a mechanism to contest property-related issues. It provides that DOC 1517, the unauthorized property notification form, will be used in disposing of unauthorized and/or excessive property, and staff are to deliver this form to the inmate. An inmate then has ten days from the date of receipt of the form to return the form detailing how the property is to be disposed by electing to: ship it out at his own expense; have the property disposed of by the state property officer; or donate the property to charity. The inmate may also elect to appeal the decision through the inmate grievance process, and the property will be held until the grievance process is complete. (ECF No. 104 at 101.)

This court has held that AR 711 provides adequate procedural protections to satisfy due process. *See Reece v. Shepherd*, 3:14-cv-00192-MMD-VPC, 2015 WL 5813243, at *4 (D. Nev. Oct. 5, 2015); *Gates v. Legrand*, 3:16-cv-00321-MMD-CBC, 2019 WL 2103709, at *8 (D. Nev. Jan. 28, 2019), *this part of report and recommendation adopted but other parts rejected in* 2019 WL 1168527 (D. Nev. Mar. 12, 2019).

While Plaintiff claims he was not given the DOC 1517 forms when his property was first confiscated, he admits that he was eventually given the forms with the informal level response to grievance 20063058113, which Plaintiff received on June 13, 2018. (*See* ECF No. 104 at 60-64.) The forms advised Plaintiff of his options with respect to disposition of his property, and the informal level grievance response reiterated these options. In his first level grievance, Plaintiff specifically stated that one of the options on the DOC 1517 form was to appeal the decision through the grievance process, and that he was electing that option. (ECF No. 104 at 68.) Plaintiff pursued this grievance to its completion, and filed other grievances about his property

that were not properly completed and rejected on procedural grounds; however, the procedural protections were offered and utilized by Plaintiff.

With respect to the television, clock radio and fan, Plaintiff was given notice of disciplinary charges for the items being altered, and had a hearing where he had the opportunity to present his case. He also admittedly had the ability to utilize the grievance process concerning these items.

To the extent Plaintiff disagrees with the outcome of the grievance or disciplinary process:

> Ultimately, it is for prison officials to determine whether an inmate's property adheres to the AR's restrictions. If prison officials have incorrectly upheld at each level of the grievance process an initial determination that property is unauthorized, and confiscate or destroy property on that basis, the violation is not one of due process but instead of the deprivation itself. Consequently, an inmate's recourse is not a constitutional claim in federal court, but instead an action in state court.

*Reece*, 2015 WL 5813243, at *5 (citing *Zinernon*, 494 U.S. at 125 (observing that "the deprivation … is not in itself unconstitutional); Nev. Rev. Stat. §§ 41.031, 41.0322).

In sum, the court finds that Plaintiff was given adequate procedural protections. Therefore, Defendants' motion for summary judgment should be granted as to the due process claim in Count I.

**B. Count II - Retaliation**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

According to Defendants, on December 7, 2017, Plaintiff had a disciplinary hearing in front of Henley pertaining to charges of compromising staff by bribing prison staff to smuggle tobacco products into the prison. (ECF No. 100-7.) There is an audio recording of the hearing. (Defs.' Ex. Q.) At the hearing, Plaintiff declined to call witnesses and declined to offer a statement in his own defense, and instead invoked his right to remain silent. Plaintiff was advised of the charge of compromising staff and he entered a plea of not guilty. Henley noted that the Inspector General's investigation revealed that Plaintiff bribed a staff member to bring in tobacco in exchange for money. Based on the staff report, Henley found Plaintiff guilty of a major violation of compromising staff and sentenced to 60 days disciplinary segregation, statutory credit loss, recommended transfer of Plaintiff to Ely State Prison (ESP), and referred the matter to the Attorney General's Office. (ECF No. 100-7; Defs.' Ex. Q.) Henley also ordered the items taken in connection with the charge to be disposed of at NDOC's discretion. (ECF Nos. 100-7, 100-8.)

Defendants argue that the audio recording of Plaintiff's disciplinary hearing proves that Plaintiff invoked his right to remain silent, voluntarily declined to call any witnesses, and was found guilty of the violation of compromising staff and was sanctioned. Moreover, the audio recording does not contain the retaliatory statements Plaintiff attributes to Henley. They contend

that Plaintiff fails to demonstrate any causal connection between the sanction imposed by Henley and any protected conduct.

Plaintiff's response does not contain an argument regarding the retaliation claim against Henley in Count II. Plaintiff discusses retaliation by Flamm several times; however, he is not proceeding with a retaliation claim against Flamm in this action.

Defendants provide evidence that Henley was the disciplinary hearing officer in Plaintiff's disciplinary hearing for the charge of compromising staff, and that Henley found Plaintiff guilty of the charge and sentenced him. The audio recording does not contain any retaliatory statements, and Plaintiff's response failed to address, yet alone raise a genuine dispute of material fact as to the retaliation claim against Henley. While the sanction may have been harsh, the conduct Plaintiff was charged with was serious, and Plaintiff has presented no evidence to support a causal connection between the sanction and his grievance activity. Therefore, summary judgment should be granted in Henley's favor in Count II.

In light of the court's conclusions, it need not reach Defendants' other arguments, including qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 100).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 10, 2021

_____
William G. Cobb
United States Magistrate Judge